# EXHIBIT A

| | |
|---|---|
| PACIFIC TRIAL ATTORNEYS<br>A Professional Corporation<br>Scott J. Ferrell, Bar No. 202091<br>sferrell@pacifictrialattorneys.com<br>Victoria C. Knowles, Bar No. 277231<br>vknowles@pacifictrialattorneys.com<br>4100 Newport Place Drive, Ste. 800<br>Newport Beach, CA  92660<br>Tel: (949) 706-6464<br>Fax: (949) 706-6469 | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of San Diego<br>10/28/2025 11:20:48 PM<br>Clerk of the Superior Court<br>By M. Manneh, Deputy Clerk |

Attorneys for Plaintiff and the Putative Class

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| BRITTNEY MEJICO, individually and on behalf of all persons similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>KOHL'S, INC., a Delaware corporation,<br><br>   Defendant. | Case No. 25CU058386C<br><br>**CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING IN VIOLATION OF B&P CODE SECTION 17529.5** |

# I. INTRODUCTION

1. California's robust Anti-Spam Law (Business & Professions Code § 17529.5) ("Section 17529.5") imposes **both** strict liability **and** punishing liquidated damages[1] on advertisers that benefit from deceptive unsolicited commercial e-mail, a/k/a "spam." It empowers recipients of such spam to file suit even if they were neither misled nor harmed by the spam,[2] dispenses with the requirement of proving intent or scienter,[3] and extends liability to the companies whose products are promoted via spam,[4] which forces those companies to actively supervise the affiliates that promote their products.

**2.** Plaintiff recently received a deceptive spam at her California email address which contained a link to www.kohls.com, and in which the subject line of the e-mail stated in relevant part **"$10 off at Kohl's."**

3. In reality, the advertisement was false – Plaintiff promptly clicked on the link and there was no such freestanding discount that did not require a significant purchase. The promise of a discount was thus literally false and entirely illusory.

4. A reasonable consumer, acting under ordinary circumstances, would likely be deceived into clicking through and considering a purchase based on the expectation of a discount that was not available. As such, the above e-mail violates Section 17529.5 in multiple ways and Defendant is strictly liable for liquidated damages of $1,000 to Plaintiff and each class member who received the spam.

# II. PARTIES

5. Plaintiff is a resident and domiciliary of the state of California.

---

[1] *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (characterizing section 17529.5 as "imposing strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails").

[2] *Hypertouch*, 192 Cal. App. 4th at 822 (holding that section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); *id.* at 829 ("the statute permits a recipient of a deceptive commercial e-mail to bring suit regardless of whether they were actually misled or harmed by the deceptive message").

[3] *See Hypertouch*, 192 Cal. App. 4th at 821 ("section 17529.5 … does not include any 'scienter' or intent requirement"); *id.* at 821-22 ("[L]ike other California statutes prohibiting false or misleading business practices, the statute makes an entity strictly liable for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) regardless of whether the entity knew that such e-mails had been sent or had any intent to deceive the recipient.").

[4] *Hypertouch*, 192 Cal. App. 4th at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails. [¶] Other portions of the statute confirm that the Legislature did not intend the statute to apply solely to those entities that actually send or initiate a deceptive e-mail."); *id.* at 821 ("In sum, both the text and legislative history of S.B. 186 make clear that section 17529.5 was intended to apply to entities that advertise in deceptive commercial e-mails, not only the spammers who send them.").

6. Defendant Kohl's is a retailer whose products are promoted through unlawful spamming.

### III. JURISDICTION AND VENUE

7. As a Court of general jurisdiction, this Court has jurisdiction over all claims asserted herein.

8. Venue is proper in this County because many of the class members received the spam in this County and because neither Defendant is a resident or citizen of California.

### IV. FACTUAL ALLEGATIONS

9. Plaintiff is a California resident and citizen and is the owner of the above e-mail address.

10. Plaintiff's e-mail address is a "California e-mail address" because Plaintiff ordinarily accesses the e-mail address from a computer in California. *See* Bus. & Prof. Code § 17529.1(b).

11. Defendant Kohl's is a retailer that promotes its products through unlawful spamming.

12. The spam identified above is a "'Commercial e-mail advertisement' because it was initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

13. Plaintiff never gave "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents. *See Balsam v. Trancos, Inc*., 203 Cal. App. 4th 1083, 1099 (2012) (noting that defendant acknowledged that recipients of its commercial e-mails did not receive "direct consent" to receive e-mails from defendant or its advertisers). Under California Business & Professions Code § 17529.1(d), "direct consent" to receive commercial email advertisements is narrowly defined and requires more than the mere existence of a customer relationship or a casual sign-up. To qualify as direct consent, the recipient must affirmatively and knowingly request or agree to receive commercial email advertisements from the specific advertiser, not from affiliates, marketing partners, or generalized "third-party offers." The consent must be clear, informed, and specific — the recipient must be told exactly who will send the emails and for what kinds of products or services. Courts interpreting § 17529 have emphasized that buried terms in a privacy policy or a pre-checked box in a lengthy online form do not constitute valid direct consent. In other words, a consumer must take an explicit, voluntary action indicating an intent to receive promotional emails from that particular sender, and the sender bears the burden of proving that such consent was properly obtained and

documentegave "direct consent" to receive commercial e-mail advertisements from Defendant or their marketing agents. *See Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1099 (2012) (noting that defendant acknowledged that recipients of its commercial e-mails did not receive "direct consent" to receive e-mails from defendant or its advertisers).

14. There are three primary ways in which commercial e-mail can run afoul of California's Anti-Spam Law (Bus. & Prof. Code § 17529.5):

a) **Unauthorized Use of a Domain Name in Violation of Section 17529.5(a)(1).** A domain name is the unique Internet address used to identify the origin of a website or an email transmission (e.g., "apple.com" or "yahoo.com"). It functions as a digital signature, signifying the source of the communication and enabling recipients to verify the sender's identity. Section 17529.5(a)(1) prohibits any person or entity from advertising in an email that is "accompanied by a third party's domain name without the permission of the third party." Bus. & Prof. Code § 17529.5(a)(1). This provision was enacted to prevent spammers from misappropriating the goodwill of trusted companies by embedding their domain names into headers, "From" fields, or hyperlinks to create the false impression of legitimacy. Misusing another entity's domain name deceives recipients, exposes them to fraud, and undermines trust in electronic communications. Courts have recognized that such spoofing practices fall squarely within the statutory prohibition. *See Balsam*, 203 Cal. App. 4th at 1097–98 (discussing § 17529.5(a)(1)'s application to domain name misuse when a domain name is inaccurate and not traceable to the actual sender).

b) **Misrepresented Header Information In Violation of Section 17529.5(a)(2)**. An email header is the portion of an electronic mail message that contains the routing, addressing, and technical information necessary for the message to be transmitted and delivered across the internet. Unlike the visible body of an email, the header records the path the message takes from the sender to the recipient and includes fields such as the "From," "To," "Date," "Subject," "Reply-To," "Return-Path," "Received" lines, and the originating Internet Protocol (IP) address. The header serves as the digital equivalent of a postmark and return address on a physical letter—it discloses who sent the message, the

servers through which it traveled, and how it reached the recipient's inbox. Misrepresenting this information conceals the true sender's identity and impedes spam filters. *See* Bus. & Prof. Code § 17529.5(a)(2); *Balsam*, 203 Cal. App. 4th at 1101 ("We … hold … that header information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS.") (emphasis in original).

c) **Deceptive Subject Lines or Contents in Violation of Section 17529.5(a)(3).** A subject line is the portion of an electronic mail message that appears in the recipient's inbox and serves as the first indicator of the message's content. Its function is to provide a concise, truthful description of the message so that the recipient can decide whether to open it. The Legislature has expressly prohibited subject lines that "would be likely to mislead a recipient about a material fact regarding the contents or subject matter of the message."[5] Bus. & Prof. Code § 17529.5(a)(3). Courts have confirmed that liability is not limited to headers or subject lines alone — deceptive statements in the body of the email are also actionable. *See Rosolowski v. Guthy-Renker LLC*, 230 Cal.App.4th 1403, 1414–15 (2014) (explaining that § 17529.5 targets "any falsity or misrepresentation contained in a commercial email," and rejecting argument that the statute was confined only to headers or subject lines).; and *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 342-43 (2010) (confirming the statute prohibits misleading content).

15. In this case, the spam violates Section 17529.5(a)(3) because the advertisement of "$10 Off at Kohl's" was false and misleading because there was no such freestanding sale to be found on the link in the e-mail; indeed, any discounts available required significant purchases.

16. In summary, a reasonable consumer, acting under ordinary circumstances, would likely be deceived[6] into searching for an illusory "$10 Off" deal that did not exist.

---

[5] For violations of subdivision (a)(3), "the plaintiff need not prove actual falsity, but only that the offending statement was 'likely to mislead' the recipient." *Hypertouch*, 192 Cal. App. 4th at 823 n.6.

[6] *See* Federal Trade Commission, *FTC Policy Statement on Deception* (Oct. 14, 1983) (defining deception as a practice likely to mislead reasonable consumers about a material fact); Federal Trade Commission, *Guide Concerning Use of the*
Continued on the next page

17.     Under Bus. & Prof. Code § 17529.5, liability attaches not only to the sender of the unlawful commercial email but also to any entity that advertises in the email. Thus, CouponCabin is liable as the sender and publisher of the spam e-mail, and Kohl's is liable as the advertiser whose products were promoted. Together, they are jointly and severally liable.

18.     California courts have made clear that advertisers cannot escape liability by outsourcing email marketing to affiliates. *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 821–22 (2011) (holding that advertisers are strictly liable under § 17529.5 for unlawful emails sent by affiliates promoting their products); *Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1099–1100 (2012) (explaining that the statute imposes strict liability to prevent advertisers from "hiding behind third parties").

19.     Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct. Plaintiff spent valuable time and attention identifying, reading, and deleting the deceptive email; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life. The misleading content also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful email and are redressable by statutory and injunctive relief.

20.     Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5. As such, Plaintiff and all class members who have received the same or similar spam are each entitled to liquidated damages of $1,000 per e-mail. *See* Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

---

*Word "Free" and Similar Representations*, 16 C.F.R. § 251.1(a) (2024) (stating that "all terms, conditions and obligations should be set forth clearly and conspicuously at the outset so as to leave no reasonable probability that the terms of the offer might be misunderstood"); and Adam D. Thierer, *Advertising, Commercial Speech, and First Amendment Parity*, Charleston Law Review, Vol. 5, 2011 (discussing how "free", "discount", and related pricing claims shape consumer perception and expectations of product access).

## V. CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on behalf of all persons similarly situated, and seeks certification of the following class:

> **All natural citizens of California who received any commercial e-mail at a California e-mail address with a misleading subject line promoting any discount at Kohls.**

22. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

23. **Numerosity**. The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 1,000 members of the Class.

24. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint.

25. **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously.

26. **Predominance of Common Questions of Law or Fact**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

   a) Whether Defendant sent and/or benefited from unsolicited commercial e-mail to Class

members;

b) Whether the e-mails were sent in violation of Business and Professions Code Section 17529.5.

27. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

28. **Ascertainability.** Defendant keep computerized records of sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant have one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## VI.   CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

29. Plaintiff received the above unsolicited commercial e-mail at Plaintiff's California e-mail address within one year prior to filing the Complaint at a California e-mail address.

30. As shown above, the spam violated Section 17529.5 because it had a materially deceptive subject line. The subject line was misleading under the "reasonable consumer" test of Section 17529.5.

31. Defendant are jointly and severally strictly liable for violation of Section 17529.5 for the spam.

32. Defendant have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

33. Plaintiff and every Class member who received the above e-mail are entitled to $1,000 in liquidated damages from Defendant up to one million dollars per incident, (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs, (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as the class representative, and that undersigned counsel be designated as class counsel;

b. For all available legal, equitable, and declaratory relief;

c. For liquidated damages;

d. For punitive damages;

e. For attorneys' fees and costs as allowed by law; and

f. For any and all other relief at law or equity that may be appropriate.

Dated: October 28, 2025

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff and the Putative Class